[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The petitioner (Minnifield) seeks a new trial on grounds of ineffective assistance of counsel set forth in his corrected Amended Complaint dated February 11, 1999.
Minnifield alleges that petitioners trial counsel's performance fell below the standards of reasonable competence of attorneys of ordinary skill and training, in criminal law.
Specifically in Paragraphs six and seven he alleges that his court appointed public defender, Jane Kennedy (Kennedy) was deficient as follows:
"Petitioner's trial counsel's advice to the petitioner to enter a plea of guilty was based, in part, on the statement of an eyewitness to the incident, Antonia Curling. Petitioner's trial CT Page 7161 counsel, however failed to disclose to the petitioner that there were three additional statements of independent eyewitnesses, Fair Hawk, Mark Askew, and Dona Franco. which contained contradictory information to the [Curling] first statement."
"The petitioner's trial attorney failed to investigate the bias of Antonia Curling in that Ms. Curling had potential criminal charges against her and had argued with the petitioner regarding his relationship with her sister."
"The petitioner's trial counsel coerced the petitioner into his decision to plead guilty instead of pursuing his right to trial by jury in that her advice was erroneous because of her failure to challenge the petitioner's confession, to disclose the three additional eyewitness statements to the petitioner, and to investigate the bias of the eyewitness relied upon by the state."
The facts relating to the underlying criminal matter were that the defendant was charged with murder. The petitioner was originally represented by Michael Isko from the Public Defender's Office. Kennedy took over the file. Minnifield was sixteen years of age at the time of his arrest.
She read the file and met with Minnifield. She read the confession of Minnifield and the statements of Antonio Curling, a witness to the murder. She did not discuss the other two witness statements with Minnifield, which statements conflicted with the statements of Curling only in that Curling described the defendant Minnifield, in white pants and white visor whereas Franco and Askew stated the person doing the shooting was in dark pants and a black or blue visor. Curling recognized Wendell Minnifield who she knew for about 3 or 4 weeks. Curling positively identified Minnifield as the person who shot the victim. Franco and Askew's statements do not mention they were familiar with Minnifield or knew him by name. Defendant's Exhibit B signed by the witness Curling, positively identified the suspect Minnifield from a picture array. Kennedy admitted that she did not share the other two witness statements (Franco and Askew) with Minnifield, but that if she had they would not have made an impact on her recommendation. She further testified she does not recall having seen the two other statements. Kennedy testified that she received a plea offer from Judge Damiam some time in May or June of 1996 for Minnifield to serve forty years which she communicated to him and advised him to take the plea bargain offer. The case was on the trial list and would start CT Page 7162 soon. Kennedy considered filing a motion to suppress the confession of Minnifield, but in her mind there was no chance of winning the motion. Kennedy further testified that it was the practice of the Public Defender's office to file the motion right before trial. A Brady motion had been filed and was already in the office file. Further, Kennedy testified that no other witnesses were presented in the probable cause hearing.
The defendant argues there is simply no proof that failure to obtain the statements of Franco and Askew prior to the entry of a plea by Minnifield was in any way deficient representation by Kennedy.
To prevail in a claim of ineffective assistance of counsel in the context of a guilty plea, a petitioner must show deficient performance; a petitioner must show that any errors made by counsel were "so serious that counsel was not functioning as the "counsel' guaranteed the defendant by the Sixth Amendment."Strickland v. Washington, 466 U.S. 668, 687. 104 S.Ct. 2052
(1984).
Moreover, if the petitioner proves deficient performance, he then must show that the deficiencies resulted in prejudice. In guilty plea cases, prejudice is established when the petitioner shows "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59,106 S.Ct. 366 (1985). "In many guilty plea cases, the "prejudice' inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial." Id. For example, where the claim rests on an allegation of counsel's failure to investigate:
 the determination of whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial. CT Page 7163
Id. "The likelihood of a successful outcome at trial has been interpreted to include either the likelihood of acquittal or the likelihood of a more favorable sentence." Copas v. Commissionerof Correction, 234 Conn. 139, 162n. 18 (1995).
This court does not conclude from the evidence that Kennedy was so deficient in her performance as to result in prejudice to the petitioner. The court concludes that showing the statements of other witnesses would not have changed the advice given by Kennedy nor was she affected by the statements. The petitioner has not demonstrated that he was prejudiced by the advice of counsel.
The claim that Kennedy failed to investigate the bias of Antonia Curling is likewise without merit since there was no evidence as to how it effected the decision of Minnifield, and that such deficiency on the part of counsel resulted in prejudice. This court does not conclude there is reasonable probability that but for counsel's errors he would not have pleaded guilty.
Count two of the Amended Petition alleges Minnifield was informed that he would only serve 50% of his sentence, which was denied by Kennedy (T.90) Minnifield testified that he relied on this assurance when entering his plea.
A valid guilty plea, or an unconditional plea of nolo contender, generally operates as a waiver of all defects in the prosecution except those involving the canvass of the plea and the court's subject matter jurisdiction. State v. Reddick,224 Conn. 445, 451, 619 A.2d 453 (1993). See State v. Gilnite,202 Conn. 369, 521 A.2d 547 (1987) (unconditional plea of nolo contendere waives ability to appeal trial court's denial of motion to dismiss); Consiglio v. Warden, 160 Conn. 151,276 A.2d 773 (1970) (petition for writ of habeas corpus denied where petitioner's plea of guilty waived his ability to argue that his confession was coerced); D'Onofrio v. Commissioner ofCorrections, 36 Conn. App. 691, 652 A.2d 1058 (1995) (petition or writ of habeas corpus properly denied because petitioner's guilty plea waived his ability to claim that insufficient evidence existed to sustain his conviction).
Thus, once the petitioner's guilty plea had been accepted, he was foreclosed from raising allegations of antecedent errors in CT Page 7164 the prosecution.
 [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann v. [Richardson, 397 U.S. 759, 90 S.Ct. 1441 (1970)].
 Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602
(1973).
Kennedy was aware that Minnifield was going to discharge her as his attorney. She discussed this fact with his mother. The day the plea was entered before Judge Damiani on June 25, 1996, Minnifield was canvassed. (Plaintiffs exhibit 5) at page 4 "The Court: Anyone forced you or threatened you to plead guilty?" The defendant "No."
The court Damiani, J. went on to question the petitioner if he had any promises to which he answered no:
At the sentencing of the petitioner on August 30. 1996, after new counsel was appointed to replace Kennedy, upon motion to withdraw the plea which was denied, the court (Damiani J.) stated at page 3 of plaintiffs exhibit 6 stated Minnifield fully understood the nature of the charge and the mandatory minimum sentence when he pled guilty. The court denied the motion to withdraw his plea with the finding that he was not pressured to enter his plea of guilty.
Accordingly the petitioner has failed to present any credible evidence that he received ineffective assistance of counsel.
Petition denied.
Frank S. Meadow, Judge Trial Referee